ORIGINAL

FILED

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GRUNLEY-WALSH, LLC
(f/k/a Grunley-Walsh Construction JV) *

Plaintiff, *

v. *

THE UNITED STATES OF AMERICA *

Defendant. *

06-723 C
Case No. : ___________
Judge:
(Irrigation Change Claim)

* * * * * * * * * * * * *

COMPLAINT

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles, Jones, Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case No.1:06-cv-00721-CFL, as it arises out of the same contract and, therefore, should be consolidated with Case No. 1:06-cv-00721-CFL.

**The Parties**

2. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

3. Defendant is the United States of America.

**The Contract**

4. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

5. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT A**. Two of these provisions were the Changes clause (FAR 52.243-04 August 1987) and the Disputes clause (FAR 52.233-01 December 1998).

6. In accordance with the Contract, on December 5, 2003 Grunley-Walsh was issued Task Order No. T3059989135 ("Task Order No. 35") in the amount of $13,993,216. Pursuant to Task Order No. 35, Grunley-Walsh was to construct and install an above ground security barrier system at the Washington Monument. More specifically, Grunley-Walsh was to accomplish work the contained in the Project Requirements (Task Order No. 35, Attachment 1) and specifications and drawings prepared under previous Task Order by the Olin Partnership. A copy of Task Order No. 35, including its Attachment 1 Project Requirements is attached hereto as **EXHIBIT B.**

7. The drawings and specifications prepared by the Olin Partnership are dated November 25, 2003 and purport to be the 90% Construction Drawings. The November 25, 2003 drawings and specifications did not contain design information for the construction of a landscape irrigation system. However, prior to the award of Task Order No. 35, an irrigation

system for the Project had been the subject of prior design submissions and numerous discussions. Further, Grunley-Walsh was aware that an irrigation system design was being developed and, for this reason, Grunley-Walsh included an "allowance" amount of $338,000, for an irrigation system, in their price proposal of $13,993,216 for the Task Order No. 35 work.

**The Certified Claim for Irrigation Change Work**

8. This action relates to an August 15, 2006 certified claim, in the amount of $742,452 (after subtracting the allowance amount of $338,000), submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clauses and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT C**.

9. By letter dated October 6, 2006 (attached as **EXHIBIT D**), the Contracting Officer advised that a Final Decision would be issued on the Certified Claim by December 8, 2006. Thereafter, by letter dated October 18, 2006 (attached as **EXHIBIT E**), the Contracting Officer effectively nullified its October 6, 2006 letter; advising that a Final Decision would not be issued on the Certified Claim until after Grunley-Walsh had submitted all their claim submissions for the Project. Specifically, the Contracting Officer stated in his October 18, 2006 letter he would be "issuing one final decision after we have received the final claim in the series". In doing so, the Contracting Officer did not provide a time and/or a date certain for when a Final Decision on the Certified Claim could be expected.

10. Based on the Contracting Officer's October 18, 2006 letter the time within which the Contracting Officer will issue a Final Decision is left open ended. Further, based on the October 18, 2006 letter, the Contracting Officer has no longer committed to issue a Final Decision on the Certified Claim by December 8, 2006.

11. As permitted by the Contract Disputes Act, more than 60 days has elapsed since submission of the Certified Claim; there has been no Final Decision issued on the Certified Claim and the Contracting Officer has not committed to a date by when a Final Decision on the Certified Claim will be issued. As such, the Certified Claim is deemed denied.

**Factual Background for the Certified Claim**

12. In May 2003, the 100% Design Development documents for the Project were completed by the Olin Partnership. These documents were not issued for construction purposes; nor were they the documents on which Task Order No. 35 was premised. However, these documents did include an irrigation specification, an irrigation plan and irrigation details.

13. During the Spring and Summer of 2003, it was determined the irrigation system contemplated in the 100% Design Development documents was far too expensive for the Government's budget. As such, a redesign was required to provide for a system that hopefully would satisfy the Government's needs while at the same time fit within the Government's budget.

14. Given these circumstances, when the 90% construction documentation (including plans and specifications) was issued in November 2003 they did not include an irrigation specification; nor did they include irrigation drawings. However, to provide the Park Service a "budget figure", since Grunley Walsh knew an irrigation redesign was being developed, Grunley-Walsh included an allowance in our price submission for the Task Order 35 work to install the irrigation system.

15. This allowance, which totaled $338,000, was premised on a price obtained from Davey Tree, a Grunley-Walsh subcontractor, to provide a very basic, open field, irrigation system with no "bells or whistles." At the time, it was contemplated this allowance would be

applied towards the cost of the change work to install the irrigation system which was being redesigned to suit the Government's needs and budget. There were also several other issues that had to be resolved in the redesign, including the ultimate water supply source for the irrigation system.

16. Both the Government and Grunley-Walsh fully understood this approach for the irrigation work. At no time, was the allowance of $338,000 ever to be considered a "guaranteed maximum price."

17. After the award of Task Order 35, the redesign of the irrigation system went through numerous iterations. In February 2004, drawings and specifications were issued that provided for a state of the art irrigation system that was computer controlled; that collected satellite weather data; and that included oversized piping for future expansion purposes. The price proposal of Davey Tree, Grunley-Walsh's irrigation subcontractor, to install this system totaled $1,197,000 (before subtracting the $338,000 contract allowance).

18. Grunley-Walsh understood the February 2004 design was an irrigation system which the Government personnel wanted. However, Grunley-Walsh also understood it was a system that was far too expensive for the Government's budget. As such during the Spring and Summer of 2004 various design modifications were discussed to reduce the cost of the irrigation system change work.

19. On September 25, 2004 revised drawings and specifications were issued for the irrigation work. These revised drawings and specifications still contemplated a state of the art irrigation system. However, by changing the burial depth of the irrigation mains and laterals; deleting sprinkler heads outside the Washington Monument Oval (and providing water cannons in lieu of sprinkler heads); and by deleting the requirements for the satellite and computer

controlled equipment, Grunley-Walsh and its subcontractor, Davey Tree, hopefully believed the irrigation system change work could be performed for approximately $500,000 (not including the booster pump and associated electrical systems that would be required for the system).

20. Modification No. 4 was issued to Task Order No. 35 ("TO 35, MOD 4") was issued to Grunley-Walsh for the cost of the booster pumps and associated electrical work.

21. To date, no Modification has been issued to Grunley-Walsh for the cost of installing the irrigation system itself.

22. The change work required to provide the irrigation system encountered numerous problems and issues that resulted in the cost of performing the change work being far greater than the $500,000 amount originally contemplated.

23. While excavating the trenches for the irrigation mains and laterals numerous unforeseen building foundations, dating back to the 1800's, were discovered. The existence of these building foundations was unknown to the Government personnel and was not in any way depicted on the background drawings initially provided by the Park Service for design purposes, including the design of the irrigation system. Had this information been available, and had Grunley-Walsh known that installation of the irrigation system would have to include excavation of these pre-existing foundations, the original pricing information provided to the Government would have been significantly higher.

24. As a result of these unforeseen conditions, Grunley-Walsh was required to excavate and dispose of tons of concrete debris to effect installation of the irrigation mains and laterals.

25. Thereafter, as installation of the irrigation change work was completing in May of 2005, the Government's delay in deciding upon a water supply and booster pumps for the

irrigation system became a serious problem. To effect a temporary work-around so the irrigation system could be started in conjunction with the hydroseeding operation that was contemplated, bypass lines had to be installed. These bypass lines permitted the irrigation system to draw water from the District of Columbia (albeit at a much slower rate than was contemplated in the irrigation system design).

26. In addition, instead of seeding the Washington Monument grounds to establish new grass, the Government decided to install sod on all disturbed areas for the Project. However, the water supply for the installed irrigation system was insufficient to provide the irrigation needed so that newly installed sod would not immediately burn and die in the 90° temperatures that are often experienced in Washington during the summer months.

27. Further, the water cannons which the Government had planned on utilizing for the new irrigation system were inadequate. For this reason, the Government directed Grunley-Walsh (through Davey Tree) to procure two new water cannons to be utilized while sod was being installed and maintained.

28. In addition to the water cannons, work crews utilizing fire hoses had to provide supplemental irrigation in order to keep the sod from dying.

29. The Government allowed Grunley-Walsh to utilize some of their Park Service employees to operate the fire hoses in order to provide the supplemental irrigation. However, the Park Service employees could only work eight hour days and they could not work on weekends.

30. The sod installation was being performed 12 to 14 hours a day and on Saturdays. As such, Grunley-Walsh, through its subcontractor, Davey Tree, had to provide personnel in order to provide supplemental irrigation with fire hoses on an overtime basis when the Park Service employees were not available.

31. As a result of the factors discussed herein, the change work required to provide the Government irrigation for the Monument grounds, cost significantly more than the original budget/allowance of $338,000 in Grunley-Walsh's Task Order No. 35 price proposal. Through every step of the process, the Government was fully aware of the additional costs being incurred and the Government was fully aware of the problems encountered while performing the change work.

32. Grunley- Walsh submitted to the Government and updated the costs to perform the irrigation change work on a continual basis.

33. In an undated letter received by Grunley-Walsh, in or about late January 2006, the National Park Service expressed the Government's position on the irrigation change work stating, "The Government believes GW installed an irrigation system within the contract requirements." A copy of this letter is attached as **EXHIBIT F**.

34. Pursuant to the Contract's Dispute clause and the Contract Disputes Act, on August 15, 2006, Grunley-Walsh submitted its Certified Claim for the irrigation change work; requesting a Contracting Officer's Final Decision on the matter.

35. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**COUNT I**

36. The allegations contained in paragraphs 1 through 35 above are incorporated by reference as through fully set forth herein.

37. Pursuant to the Contract, Grunley-Walsh is entitled to an equitable adjustment in the amount of $742,452 for the additional cost to perform the change work required to provide irrigation to the Project.

38. As such, the Government is liable to Grunley-Walsh for $742,452, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $742,452, plus such other and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: 10/20/2006